UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BAM GRESSETT, ET AL.                          CIVIL ACTION

V.                                            NO. 16-1272

SOUTHWEST AIRLINES COMPANY, ET AL.            SECTION F

ORDER AND REASONS

Before the Court is Southwest Airlines Co.'s motion for summary judgment on all claims.  For the reasons that follow, the motion is GRANTED.

**Background**

The plaintiffs in this litigation are suing, both literally and metaphorically, over peanuts.  On February 14, 2014, Andrew Gressett, Bam Gressett, and their minor son A.G. were the first passengers to pre-board Southwest Flight No. 3006, set to depart from New Orleans to Los Angeles with a brief stop in Houston.  The Gressetts were planning to visit Legoland in celebration of A.G.'s

birthday before traveling down coast to San Diego to visit with family friends.[1]

Upon embarking, Andrew Gressett began searching for a row of seats that would accommodate his recent back injury while allowing him to sit with his family.  He found three suitable seats in the second row only to allegedly discover a flight attendant identified only as "Kelly" sitting in the center seat, eating and reading a magazine.  According to the plaintiffs, Kelly "stormed off" in a huff as they approached the row.  Kelly purportedly told another flight attendant, "I guess I need to move before he [Mr. Gressett] runs me over."  As Mr. Gressett placed his family's carry-on luggage in an overhead bin, the plaintiffs assert, Kelly again "stormed" to the front of the aircraft and told the passenger behind the plaintiffs, "You can come in if this person [Mr. Gressett] moves out of the aisle."  Mr. Gressett retorted that he and his family would already have been seated had Kelly not been sitting in their chosen row.  The plaintiffs thereafter settled

---

[1] In support of its motion, Southwest has included a Statement of Uncontested Facts drawn from the original complaint, deposition testimony, pleadings, and documents introduced by the plaintiffs. Because the plaintiffs present no objections to Southwest's Statement, the Court may and will rely on the Statement to set forth the facts of this case. Fed. R. Civ. P. 56(e)(2).

into their seats, with Mr. Gressett taking the aisle, Mrs. Gressett sitting in the middle, and A.G. opting for the window seat.

Once in the air, Kelly began distributing bags of peanuts to passengers.  The plaintiffs allege that when Kelly reached their row, she "forcefully pushed" bags of peanuts into Mr. Gressett's hands before throwing "four to six" bags at his face and torso. Mr. Gressett then complained to his wife of Kelly's "Southwest White Trash Professional Behavior."

When she heard this remark, Kelly warned the plaintiffs, "If you don't watch your language, security will be waiting for you when you land."  Although the plaintiffs' original complaint characterizes Kelly's warning as a loud proclamation, they later admitted that she leaned in and spoke to them quietly, as if to prevent other passengers from eavesdropping.  Neither of the plaintiffs could confirm that anyone else heard Kelly's comment.

The plaintiffs assert that, on at least two other occasions during the flight, Kelly bumped Mr. Gressett with her hip.  During their depositions, however, neither Mr. nor Mrs. Gressett could testify with certainty that Kelly intended the contact.[2]   Mr.

---

[2] Deposition testimony furnished no evidence that A.G. was aware of the tumult involving his parents and Kelly. Mrs. Gressett, in fact, testified that A.G. was watching a movie with headphones on during the entire ordeal.

Gressett even realistically acknowledged that inadvertent contact with flight attendants "inevitably" occurs on crowded flights.

Although the rest of the flight proceeded without incident, the plaintiffs claim that the fear of arrest and detention engendered by Kelly's threat beset them until they landed and disembarked in Los Angeles.  The vacation unfolded as planned, but residual distress from the incident on the flight apparently prevented Mr. and Mrs. Gressett from enjoying themselves. They claim to have been upset for as many as 10 days after the flight. But neither Mr. Gressett nor Mrs. Gressett sought medical treatment for their alleged emotional anguish.  A.G. suffered no discernible effects of the flight that so tormented his parents.

On March 19, 2015, Mr. Gressett wrote to Southwest President Gary Kelly urging him to investigate the flight attendant Kelly's behavior and threatening litigation.  In its response on March 31, 2015, Southwest commented that its reports differed from the plaintiffs' allegations, but pledged to handle the situation internally.  On February 13, 2016, the plaintiffs filed this lawsuit, invoking this Court's diversity subject matter jurisdiction under 28 U.S.C. § 1332.  The complaint alleges that, within the course and scope of her employment with Southwest, Kelly engaged in intentional and negligent conduct which resulted in

4

severe emotional distress.  According to the plaintiffs, Kelly's peanut hurling, hip checking, and threat of arrest constituted assault and defamation.  The complaint further accuses Southwest of direct negligence in failing to prevent the incident or intervene, as well as in its hiring, training, and supervision of Kelly.  Finally, the complaint seeks to hold Southwest liable for "any and all other acts of negligence and/or carelessness" that come to light.  Southwest now seeks summary judgment dismissing the plaintiffs' claims.

## Discussion

### I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The mere argued existence of a factual dispute does not defeat an

otherwise properly supported motion.  See id.  Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate.  Id. at 249 (citations omitted); see also Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted) ("[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of a claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must adduce competent evidence, including but not limited to sworn affidavits and depositions, to buttress his claims.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  However, affidavits or pleadings which contradict earlier deposition testimony cannot create a genuine issue of material fact sufficient to preclude an entry of summary judgment.  See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996); Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 137 n. 23 (5th Cir. 1992).

In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable

6

to the nonmoving party.  <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007) (citations omitted).   Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  <u>Antoine v. First Student, Inc.</u>, 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

<i>A.</i>

Southwest first seeks summary judgment on the plaintiffs' intentional infliction of emotional distress claim.   The plaintiffs insist that Kelly's "threatening and bullying" behavior sullied the Gressetts' long-awaited family vacation and resulted in severe mental anguish, rendering Southwest[3] liable for damages. As a matter of law, the plaintiffs' claim must be dismissed.

In <u>White v. Monsanto Co.</u>, 585 So. 2d 1205, 1209 (La. 1991), the Louisiana Supreme Court outlined the three elements a plaintiff must establish in order to successfully bring a claim for intentional infliction of emotional distress (IIED) under Louisiana law: (1) extreme and outrageous conduct by the defendant;

---

[3] Southwest does not contest, and this Court assumes, that Kelly acted within the course and scope of her employment when interacting with the plaintiffs.

(2) severe emotional distress suffered by the plaintiff[s]; and (3) the intent by the defendant to inflict severe emotional distress or the knowledge that severe emotional distress was certain or substantially certain to result from the defendant's conduct. Failure to prove any of the three foregoing elements is fatal to an IIED claim.  See id.

(1)  Extreme and Outrageous Conduct

The Supreme Court in White defined extreme and outrageous conduct as that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Id.  Significantly, the Court clarified that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to a valid intentional infliction claim.  Id.  The conduct element is a demanding one for plaintiffs.  See id. at 1210-11 (finding that work supervisor's one-minute tirade against employees did not meet outrageousness requirement); see also, e.g., Murungi v. Texas Guaranteed, 693 F. Supp. 2d 597, 608 (E.D. La. 2010) (holding that loan collector's initiation of wage garnishment proceedings and "harassing and embarrassing" phone calls to plaintiff, though "perhaps obnoxious," were not extreme or outrageous); Mederos v.

8

St. Tammany Par. Gov't, No. 2015-CA-1602, 2016 WL 3683478, at *6 (La. App. 1 Cir. July 11, 2016) (finding that supervisor's alleged micromanagement and overworking of employee did not meet the White standard for outrageousness).

According to the Statement of Uncontested Facts, Kelly allegedly complained about Mr. Gressett "run[ning] over" her; ridiculed Mr. Gressett taking too long to load his family's luggage into the overhead bin; opted for an uncourteously hostile method of peanut delivery; and quietly warned Mr. Gressett, after he referred to her as "White Trash," that security would be waiting at the Houston gate if he failed to clean up his language. No rational trier of fact could conclude that this behavior qualified as anything more than regrettably rude and off-putting. Even accounting for the "unique and sensitive conditions" of commercial air travel, as the plaintiffs insist this Court must, Kelly's crass alleged behavior amounts to the kinds of affront that would at best annoy reasonable people. Kelly's alleged actions, in fact, epitomize the "mere insults" the White Court and others have specifically characterized as too trivial to support an intentional infliction for emotional distress claim. See White, 585 So. 2d at 1209, 1210-11; Murungi, 693 F. Supp. 2d at 608; Mederos, 2016 WL 3683478, at *6. Accordingly, as a matter of law,

the plaintiffs cannot establish that Kelly engaged in sufficiently extreme or outrageous conduct.

(2)  Severe Emotional Distress

The Court's analysis of the "extreme and outrageous" element suffices to dismiss the plaintiffs' emotional distress claim on a motion for summary judgment.  However, because the degree of the plaintiffs' alleged emotional harm bears on each of their remaining claims, the Court addresses that issue here.

Recovery on an IIED claim under Louisiana law requires a level of distress beyond a reasonable person's endurance.  White, 585 So. 2d at 1210.  Genuine humiliation, anxiety, confusion, upset, worry and the like are typically insufficient.  See Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1030 (La. 2000); see also Pate v. Pontchartrain Partners, LLC, No. 13-6366, 2014 WL 5810521, at *4 (E.D. La. Nov. 7, 2014)(holding that humiliation and dismay over employment termination during pregnancy did not meet severity requirement); Deville v. Robinson, 132 So. 3d 1277, 1281 (La. App. 3 Cir. 2/26/14) (dismissing IIED claim when plaintiff suffered series of anxiety attacks, some of which may have borne no relation to the defendant's conduct).  Some symptoms of severe emotional distress include "neuroses, psychoses, chronic depression, phobia, and shock."  Pate, 2014 WL 5810521, at *4 (quoting Aronzon v. Sw.

10

_Airlines_, No. Civ.A. 03-394, 2004 WL 57079, at *6 (E.D. La. Jan. 9, 2004)).  Although failure to seek medical treatment for the emotional distress sustained does not by itself doom a claim for emotional distress damages, it hampers any argument that a plaintiff was beset by severe anguish.  _Pate_, 2014 WL 5810521, at *4 (quoting _Aronzon_, 2004 WL 57079, at *6).

Despite asserting that residual anxiety and distress from their encounters with Kelly "ruined" their vacation, the plaintiffs admittedly participated in all of their planned activities.  The Court notes that the plaintiffs never sought medical attention or treatment for their alleged distress.  The plaintiffs' endurance of the California vacation and forgoing of medical treatment, they explain, stems from their decision to "live their lives, instead of setting aside responsibilities in order to maximize their claims by 'living their case.'"  And so, the plaintiffs undermine the merits of their own case.  That the plaintiffs even _could_ enjoy a lavish 10-day vacation and "live their lives" illustrates that their emotional suffering fell well within the range of reasonable human endurance. _See Nicholas_, 765 So. 2d at 1030; _White_, 585 So. 2d at 1210.  No matter how authentic their consternation over the in-flight fiasco, the plaintiffs have failed to create a triable issue of fact as to whether they suffered the kind of debilitating emotional fallout needed to

11

support an IIED claim.[4]   Summary judgment dismissing the plaintiffs' IIED claim is patently warranted.

*B.*

Southwest also asks this Court to dismiss the plaintiffs' claim that Kelly assaulted them by threatening to call security in response to Mr. Gressett's "White Trash" comment.  This claim must also be dismissed as a matter of law.

An assault occurs when an intentional threat of battery, or harmful or offensive contact, places one in reasonable apprehension of receiving an injury.  See McVay v. Delchamps, Inc., 707 So. 2d 90, 93 (La. App. 5 Cir. 1/14/98); Castiglione v. Galpin, 325 So. 2d 725, 726 (La. App. 4 Cir. 1976); State in re Cortez, 319 So. 2d 496, 497 (La. App. 4 Cir. 1975).  The law clearly provides for a colorable assault claim only when the threat is one

---

[4] Because the plaintiffs' failure as a matter of law to establish either of the first two elements of an IIED claim is dispositive, the Court will forego examination of Kelly's intent to inflict severe emotional harm. To the extent the plaintiffs allege that Kelly negligently inflicted severe emotional distress, the Court's holding that the plaintiffs' emotional anguish was not severe effectively defeats that claim. See Moresi v. Dep't of Wildlife & Fisheries, 567 So. 2d 1081, 1095 (La. 1990) ("[I]f the defendant's conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance."); Bonnette v. Conoco, Inc., 837 So. 2d 1219, 12235 (La. 2003) (holding that emotional distress must be "genuine and serious" for plaintiff to recover in absence of physical injury).

of *physical* violence.   In Castiglione v. Galpin, for example, the defendant committed assault by pointing a shotgun at the plaintiffs.   325 So. 2d at 726.   In State in re Cortez, the defendant assaulted a fellow student by threatening him with a knife. 319 So. 2d at 497.

No evidence suggests that, in responding to Mr. Gressett's crass language, Kelly manifested an intent to threaten him or his family with harmful or offensive contact.   Nor do the plaintiffs allege that Kelly's warning that she would enlist security's help placed them in fear of physical injury.   Instead, they suggest that the power Kelly wielded as a result of the "deference" afforded airline employees in the name of security and safety augmented the Gressetts' panic over being arrested and separated from A.G.   They further offer the risible assertion that they "would have preferred a threat of a knife or shotgun" to the possibility of being detained by security in Houston, a statement as breathtaking in its absurdity as in its disingenuousness.[5] Clearly, the apprehension of eventual arrest and detention here— and the Court would strain to even regard that apprehension as reasonable—is not the sort giving rise to a valid assault claim. The plaintiffs' claim that Kelly's warning constituted an assault

---

[5] And in itself borders the fringes of 28 U.S.C. § 1927.

defies law and common sense.  The defendant is entitled to judgment as a matter of law dismissing the assault claim.

*C.*

The plaintiffs additionally contend, in cursory fashion, that Kelly assaulted and battered Mr. Gressett by 1) pelting him with peanuts and 2) bumping into him with her hip at least twice. Both claims are without merit.

Even assuming Kelly forcefully shoved peanuts onto Mr. Gressett, he suffered no physical injury.  Furthermore, the summary judgment record (including the Statement of Uncontested Facts, deposition testimony and the plaintiffs' own pleadings) signify that the plaintiffs' alleged fear of arrest and detention from Kelly's warning, rather than the trauma from Kelly's peanut attacks, led to the plaintiffs' emotional distress.  The source of the anguish notwithstanding, its lack of severity also defeats the plaintiffs' assault and battery claims in the absence of physical injury. Therefore, as a matter of law, Kelly neither assaulted nor battered Mr. Gressett with her allegedly aggressive form of delivery of the peanut packages.

The same is true of Kelly's alleged hip-bumping.[6]   In addition, as Southwest points out, the plaintiffs admitted in their deposition testimony that they could not determine with certainty whether Kelly intentionally bumped Mr. Gressett.   Given that the plaintiffs admit to an inability to prove intent, no reasonable finder of fact could conclude that Kelly intended to contact Mr. Gressett on this evidence.   Summary judgment for the hip-related assault and battery claims is thus appropriate.

*D.*

In their original complaint, the plaintiffs also assert claims for defamation, negligent training and supervision, and mental injury to A.G., the Gressetts' minor son.   Because the plaintiffs renounced or largely ignored these claims in their opposition, the Court will summarily explain their dismissal here.

After initially accusing Kelly of defamation, the plaintiffs acknowledge in their opposition papers that their defamation claim "may lack the full complement of elements necessary to prevail." Indeed, defamation in Louisiana consists of a false or defamatory statement, publication to a third party, negligence on the part of

---

[6] The Court takes judicial notice that other passengers as well as staff are guilty of aisle hip bumping on flights, which many travelers find annoying.

a publisher, and actual injury, none of which occurred in this case. See Fitzgerald v. Tucker, 737 So.2d 706, 715 (La. 1999). Accordingly, the plaintiffs' defamation claim is dismissed as a matter of law.

The original complaint also charges Southwest with "failing to properly train, screen, monitor, supervise or otherwise prevent the hiring of . . . their obviously unstable and improperly trained and/or unprepared employee." In their opposition papers, the plaintiffs strip their direct negligence back to a few fleeting mentions of Southwest's failure to "train and control" Kelly. The plaintiffs point to nothing regarding Southwest's training methods or Kelly's alleged instability. They further conceded in their sworn deposition testimony that Kelly uttered her warning of security's involvement quietly and that they could not confirm that other Southwest employees witnessed enough of her conduct to intervene. Because the plaintiffs cannot prove essential elements of their claim, the direct negligence claims against Southwest are therefore dismissed.

The plaintiffs also sought damages for the "actual mental injury and upset" to A.G. in their original complaint. The opposition papers refer only to Mr. and Mrs. Gressett's fear of A.G. sustaining mental injury and upset. As the Statement of Uncontested Facts indicates, the plaintiffs present nothing

16

regarding their child's suffering or even becoming aware of his parents' confrontation with Kelly. The only mental anguish alluded to is that of the parents, which this Court has already determined falls well below the threshold of "serious" under Louisiana law. Accordingly, the defendant is entitled to judgment as a matter of law dismissing any claim for mental anguish damages brought on behalf of A.G.

*E.*

Finally, in their opposition papers, the plaintiffs introduce for the first time in this case claims for breach of contract, third-party witnessing of injury to a spouse, and "Lost Vacation Enjoyment." Insofar as the plaintiffs have attempted to amend their original pleadings well past the pleading deadlines without good cause, the Court does not consider them. See Fed. R. Civ. P. 15(a); Fahim v. Marriott Hotel Serv., Inc., 551 F.3d 344, 347-48 (5th Cir. 2008); Scheduling Order dtd. 4/19/16.

Even assuming that the plaintiffs had properly pleaded these claims, none would have merit. In asserting that Southwest committed "the tort of breach of contract," the plaintiffs neglect to reference any contract between the parties or explain how Southwest breached any terms of such contract. They merely rehash

17

their emotional distress claims under the guise of asserting a claim for breach of contract.

The plaintiffs' new claim for third-party witness damages under Article 2315.6 of the Louisiana Civil Code betrays ignorance of that Code provision's applicability. Article 2315.6 permits recovery to claimants who suffer severe emotional distress as a result of witnessing their spouse incurring a serious, visible physical injury. See Trahan v. McManus, 728 So.2d 1273, 1277-79 (La. 1999). As has been established, Mr. and Mrs. Gressett neither suffered severe emotional distress nor witnessed the other spouse sustain a serious physical injury.

Although they style it as a claim "Lost Vacation Enjoyment," the plaintiffs' final argument in their opposition papers is really one for nonpecuniary damages of a breach of contract under Louisiana Civil Code Article 1998. Such damages are only recoverable when the contract breached was, by its nature, designed to gratify a nonpecuniary interest. La. Civ. Code art. 1998. Again, the plaintiffs neither reference any contract nor explain how Southwest has breached that contract. In Vick v. National Airlines, Inc., 409 So. 2d 383, 385-86 (La. App. 4 Cir. 1982), to which the plaintiffs cite approvingly, the court allowed a couple to recover mental anguish damages from an airline after the airline

breached its obligation to fly the plaintiffs non-stop to Miami. In this case, by contrast, Southwest Flight No. 3006 timely took the plaintiffs to their ultimate destination, where they proceeded with their vacation as planned.

## Conclusion

For the foregoing reasons, summary judgment dismissing all of the plaintiffs' claims against Southwest is appropriate. Viewing the evidence in the light most favorable to the plaintiffs, even assuming Kelly engaged in the alleged poor conduct, the plaintiffs' frivolous and seemingly vindictive claims have no legal remedy as a matter of law.   Accordingly, the defendant's motion for summary judgment is hereby GRANTED.   The plaintiffs' case is dismissed with prejudice.

New Orleans, Louisiana, October 20, 2016

MARTIN L.C. FELDMAN
U.S. DISTRICT JUDGE